IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DANETTA LEE COX-CORDOVA, and DAVID RUSSELL COX,<br><br>        Plaintiffs,<br><br>v.<br><br>FRANK STEWART COX,<br><br>        Defendant. | REPORT & RECOMMENDATION<br><br>Case No. 2:11-cv-00945<br><br>District Judge Dale A. Kimball<br><br>Magistrate Judge Paul M. Warner |

This matter was referred to Magistrate Judge Paul M. Warner by District Judge Dale A. Kimball pursuant to 28 U.S.C. § 636(b)(1)(B).[1]  Before the court are Frank Stewart Cox's ("Defendant") (1) motion to dismiss for lack of subject matter jurisdiction,[2] and (2) motion to strike portions of Danetta Lee Cox-Cordova's ("Danetta") and David Russell Cox's ("David") (collectively, "Plaintiffs") opposition to Defendant's motion to dismiss.[3]  The court has carefully reviewed the motions and memoranda submitted by the parties.  Pursuant to civil rule 7-1(f) of the United States District Court for the District of Utah Rules of Practice, the court elects to determine the motions on the basis of the written memoranda and finds that oral argument would not be helpful or necessary.  *See* DUCivR 7-1(f).

As an initial matter, the Court notes that Plaintiffs are proceeding pro se in this case.  As such, the Court will "construe [Plaintiffs'] pleadings liberally and hold the pleadings to a less stringent standard than formal pleadings drafted by lawyers."  *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996).

---

[1] *See* docket no. 5.

[2] *See* docket no. 11.

[3] *See* docket no. 16.

## BACKGROUND

Plaintiffs allege the following facts in their Complaint.[4] The parties are siblings, related to one another through a common father, Gail Russell Cox ("Father"). Their Father "had a history of abandoning, and then welcoming back, all 3 of his children."[5] In the mid-1980s, David was disowned after a quarrel with their Father. A few years later, their Father told Danetta that "he had officially disowned [Defendant] . . . [and Defendant] was now out of his [w]ill, and that [Danetta] would be sole heir."[6] Danetta "made a special effort to get [Defendant and their Father] to reconcile,"[7] which they ultimately did. In 2001, Danetta "had a quarrel with [their Father] that ended in him disowning [her]."[8] Danetta later found out that their Father had "made [Defendant] sole heir and executor of his estate."[9]

The crux of Plaintiffs' suit is that Defendant used undue influence over their Father and intercepted any possibility for reconciliation between their Father and Plaintiffs, consequently benefiting Defendant financially. Danetta asserts that she sent several letters to her Father but never received a reply. Danetta believes that her Father did not receive her letters because Defendant "and his immediate family, had access to [their Father's] mail," and could have prevented her Father from receiving the letters.[10] Plaintiffs further maintain that Defendant withheld vital information important to Plaintiffs:

---

[4] *See* docket no. 1.

[5] *Id.* at 1.

[6] *Id.* at 2.

[7] *Id.*

[8] *Id.* at 3.

[9] *Id.*

[10] *Id.* at 4.

> [Defendant] did not let . . . [Plaintiffs] know that [their Father] had a massive heart attack on or about April of 2009. [Defendant] did not tell [Plaintiffs that their Father] had been in a coma, or that he was on his death bed, wasting away to nothing, for 6 months before his death on October 19[,] 2009. [Plaintiffs] did not get any chance to say goodbye to [their Father] or reconcile, and did not even know about [the] burial.[11]

Danetta contacted Defendant shortly after their Father's death to inquire about their Father's estate. Danetta told Defendant that "David . . . [was] homeless (living with [their half] brother Darryl, who himself was unemployed and near eviction). [Danetta] also told [Defendant] that David is deathly ill, he is 6 foot 1 [inches] tall and [weighed] less than 100 lbs."[12] Further, Danetta was in need of money to help pay for her son's graduate school. Defendant's reply to Plaintiffs' financial needs was that he was sorry but the money from their Father's estate was either spent or invested in various projects.[13]

Plaintiffs believe Defendant had the "means, motive and opportunity to stop any reconciliation with [their Father] . . . [and] had no intention of letting [Plaintiffs] have any last opportunities to reconcile and amend [their F]ather's estate to include [Plaintiffs]."[14] Plaintiffs bring this action requesting one-third share each of their Father's estate, one-third share each of the proceeds from the sales/donations/gifts made from their Father's personal assets, and an equal division of their Father's personal and sentimental possessions, such as photographs and sporting items.

## **DISCUSSION**

Defendant has filed two separate motions: (1) a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), and (2) a motion to strike

---

[11] *Id.*

[12] *Id.* at 5.

[13] *Id.*

[14] *Id.*

portions of Plaintiffs' memorandum in opposition to Defendant's motion to dismiss pursuant to Rule 602 and Rule 802 of the Federal Rules of Evidence. The court will address each motion in turn.

### (1) Defendant's Motion to Dismiss the Complaint for Lack of Subject Matter Jurisdiction

Defendant filed a Motion to Dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(1), contending that the court lacks subject matter jurisdiction. Specifically, Defendant asserts that Plaintiffs did not set forth any federal cause of action under 28 U.S.C. § 1331 and that diversity jurisdiction does not exist because one of the plaintiffs, David, and Defendant are both domiciled in Utah. In response, Plaintiffs contend that jurisdiction over their claims is conferred upon this Court based upon diversity of citizenship. Plaintiffs do not appear to contest Defendant's assertion that a federal cause of action is lacking. Therefore, the Court will only address the issue of diversity jurisdiction.

Diversity jurisdiction is conferred on the district courts by 28 U.S.C. § 1332(a). *See* 28 U.S.C. 1332(a) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between (1) citizens of different States . . . ."). The party asserting jurisdiction has the burden of establishing subject matter jurisdiction, *see Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002), but, "since the courts of the United States are courts of limited jurisdiction, there is a presumption against its existence." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). It is well established that "a party must show that complete diversity of citizenship exists between the adverse parties." *Peterson v. Brown*, No. 2:06cv511DAK, 2007 WL 3254750, at *1 (D. Utah Nov. 2, 2007); *see also Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1120, 1225 (10th Cir. 2004). The requirement of complete diversity must be strictly construed.

*See Domenico v. Phillips*, No. 10-cv-02610-PAB-MJW, 2011 WL 1595998, at *1 (D. Colo. Mar. 9, 2011).

In the instant case, Defendant argues that this Court lacks subject matter jurisdiction because David resides in Utah. Plaintiffs counter this argument by disputing David's domicile. Citizenship, for diversity jurisdiction purposes, is based on the domicile of the parties. *See Crowley v. Glaze*, 710 F.2d 676, 678 (10th Cir. 1983). "To establish domicile, a party must have physical presence in a location and an intent to remain there indefinitely." *Weber v. Hays Med. Center, Inc.*, No. 99-2540-KHV, 2000 WL 968788, at *2 (D. Kan. June 26, 2000). Plaintiffs contend that David has no intention of remaining in Utah indefinitely and the reason why he is currently residing in Utah is because he is a "deathly ill, homeless veteran who was forced to stay with [Plaintiffs'] half brother . . . in his rented home in Salt Lake City[,] Utah."[15] Per the Plaintiffs' affidavit, David has resided with his half brother in Salt Lake City since August of 2010.[16] Although Plaintiffs' contend that David has no intention to remain in Utah indefinitely, "a 'floating intention' to return to a former domicile does not prevent the acquisition of a new domicile." *Crowley*, 710 F.2d at 678. Plaintiffs have indicated only a general implication of David's lack of intention to remain in Utah indefinitely. Thus, it is reasonable to conclude that David was a citizen of Utah when he filed suit.

The Court agrees with Defendant that Plaintiffs have failed to establish subject matter jurisdiction. Plaintiffs have not alleged a federal cause of action under 28 U.S.C. § 1331 nor have they established diversity jurisdiction under 28 U.S.C. § 1332(a). As such, this Court does not have subject matter jurisdiction to determine the merits of the case and recommends that Defendant's motion to dismiss be **GRANTED**.

---

[15] Docket no. 19 at 1.

[16] *See id.* at 7–8.

**(2)     Defendant's Motion to Strike Portions of Plaintiffs' Opposition to Motion to Dismiss and Exhibit A**

Defendant seeks to strike the declaration attached at Exhibit A to Plaintiffs' Memorandum in Opposition to Motion to Dismiss, as well as portions of the memorandum itself, as inadmissible hearsay pursuant to Rules 602 and 802 of the Federal Rules of Evidence. Because this Court lacks subject matter jurisdiction and is recommending that the case be dismissed, Defendant's motion to strike should be deemed **MOOT**. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("Article III generally requires a federal court to satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case.") .

## CONCLUSION

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that Defendant's motion to dismiss be **GRANTED** and motion to strike be deemed **MOOT**.

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object. *See* 28 U.S.C. § 636(b)(1). The parties must file any objection to this Report and Recommendation within fourteen (14) days after receiving it. *See id.* Failure to object may constitute waiver of objections upon subsequent review.

**IT IS SO ORDERED**.

DATED this 13th day of June, 2012.

BY THE COURT:

_____
PAUL M. WARNER
United States Magistrate Judge